IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Ann Marie Bogan,

Chapter 7

Debtor.

Case No. 12-16624

MEMORANDUM DECISION

Debtor Ann Marie Bogan filed a chapter 7 bankruptcy on December 7, 2012. She amended her claims of exemptions on January 31, 2013. Trustee Zeddun issued a report of no distribution on February 19, 2013. The case was closed on March 29, 2013.

Ms. Bogan moved to reopen her case on November 7, 2014. That motion was granted and Ms. Bogan filed another amendment to her claimed exemptions. Ms. Zeddun objected to that amendment.

The issue raised by the trustee's objection is whether Ms. Bogan's amended claim for exemption of benefits in an American Heritage Life Insurance Co. Policy can be denied because it was made in bad faith. Ms. Zeddun asserts it can, citing *In re Yonikus*, 996 F.2d 866 (7th Cir. 1993). Ms. Bogan argues that *In re Yonikus* has been abrogated by *Law v. Siegel,* 134 S.Ct. 1188 (2014), in which the Supreme Court discussed the fact federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the code.

This bankruptcy court has long recognized its equitable power to deny bad faith exemption amendments, dating back to the early 1980s before the current bankruptcy rules existed. See *In re Kochell*, 23 B.R. 191, 192 (Bankr. W.D. Wis. 1982)(citing *In re Bessel*, 18 B.R. 320, 322-23 (Bankr.W.D. Wis. 1982)(articulating a four part standard for allowance of an

1

amendment)). Despite the enactment of Federal Rule of Bankruptcy Procedure 1009, providing in pertinent part "a voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed," many circuit courts also have carved out exceptions for bad faith amendments. See, e.g., *In re Hannigan*, 409 F.3d 480 (1st Cir. 2005) (Chapter 7 debtor was not allowed to amend homestead exemption because debtor acted in bad faith by intentionally undervaluing debtor's property and excluding a parcel of land from debtor's original exemptions); *In re Kaelin*, 308 F.3d 885 (8th Cir. 2002) (distinguishing between good faith and bad faith amendment of exemptions); *In re Unruh*, 265 Fed.Appx. 148 (5th Cir. 2008) (debtors who engage in deception and active concealment of value of real estate are not allowed to amend exemptions). In particular, the United States Court of Appeals for the Seventh Circuit case, *In re Yonikus*, discusses exceptions to the general rule that debtors are free to amend their schedules:

> We begin our consideration by recognizing that a debtor may amend a voluntary petition pursuant to Bankruptcy Rule 1009(a) "as a matter of course at any time before the case is closed." *See* Advisory Committee Note to Rule 1009; *In re Peterson*, 920 F.2d 1389, 1394 (8th Cir.1990); *Lucius v. McLemore*, 741 F.2d 125, 126 (6th Cir.1984). There are exceptions to this principle.
>
> Exceptional circumstances may prevent a debtor from amending schedules. Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. *See Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982). A mere allegation by an objector of bad faith is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence. *See Matter of Brown*, 56 B.R. 954, 958 (Bankr.E.D.Mich.1986).
>
> *In re Kobaly*, 142 B.R. at 748-49. Agreeing with the position of other circuits regarding Bankruptcy Rule 1009(a), this circuit endorses the "permissive approach" of allowing amendment of schedules, including lists of exempt property, at any time before the case is closed, with the caveat that an amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors. *Accord, In re Calder*, 973 F.2d

2

>862, 867 (10th Cir.1992); *Matter of Williamson,* 804 F.2d 1355, 1358 (5th Cir.1986); *Lucius v. McLemore,* 741 F.2d at 127; *Doan,* 672 F.2d at 833.

*In re Yonikus,* 996 F.2d at 871-72 abrogated by *Law v. Siegel,* 134 S. Ct. 1188 (footnote omitted). Prior to *Law v. Siegel,* this court could have followed *Yonikus,* and the main issue in this case would have been whether there is clear and convincing evidence of bad faith.

However, in *Law v. Siegel,* Judge Scalia discusses the propriety of barring debtors from amending their schedules based on fraudulent concealment:

> Siegel points out that a handful of courts have claimed authority to disallow an exemption (or to bar a debtor from amending his schedules to claim an exemption, which is much the same thing) based on the debtor's fraudulent concealment of the asset alleged to be exempt. See, *e.g., In re Yonikus,* 996 F.2d 866, 872–873 (C.A.7 1993); *In re Doan,* 672 F.2d 831, 833 (C.A.11 1982) (*per curiam* ); *Stewart v. Ganey,* 116 F.2d 1010, 1011 (C.A.5 1940). He suggests that those decisions reflect a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct. For the reasons we have given, the Bankruptcy Code admits no such power. It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption. *E.g., In re Sholdan,* 217 F.3d 1006, 1008 (C.A.8 2000); see 4 Collier on Bankruptcy ¶ 522.08[1]–[2], at 522–45 to 522–47. Some of the early decisions on which Siegel relies, and which the Fifth Circuit cited in *Stewart,* are instances in which federal courts applied state law to disallow state-created exemptions. See *In re Denson,* 195 F. 857, 858 (N.D.Ala.1912); *Cowan v. Burchfield,* 180 F. 614, 619 (N.D.Ala.1910); *In re Ansley Bros.,* 153 F. 983, 984 (E.D.N.C.1907). But *federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code.

*Siegel,* 134 S. Ct. at 1196-97. Essentially, the Supreme Court notes its belief that bankruptcy judges do not have authority under the bankruptcy code to limit federal exemptions.

Nevertheless, Ms. Zeddun offers three grounds for denial of Ms. Bogan's amendment: (1) FRBP

3

4003(b)(2); (2) the relevant part of *Siegel* is dicta; and (3) judicial estoppel. None of these grounds is persuasive.

Bankruptcy rule 4003(b)(2) provides "The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption…" FRBP 4003(b)(2). But "[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights … the Bankruptcy Rules [only] define the process by which these privileges may be effected." *In re Hanover Indus. Mach. Co.,* 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986). Thus, the bankruptcy rules cannot authorize the court to act in absence of a code provision creating the right. See *In re Gee*, 204 F.3d 1115 (5th Cir. 1999)(" Under 28 U.S.C. § 2075, the rules the Supreme Court was given the power to promulgate are not to 'abridge, enlarge, or modify any substantive right'"); *In re Stoecker*, 179 F.3d 546, 552 (7th Cir. 1999) ("But in a conflict between the Code and the rules, the Code controls, 28 U.S.C. § 2075; *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064, 1066 (9th Cir. 1994)"). If Congress wanted to give bankruptcy courts the power to deny bad faith exemption amendments, then it would have added a provision to § 522.

Much of what the debtor relies on is dicta in *Siegel* and not necessary to the holding of that case. In *In re Woolner*, 2014 WL 7184042, at 3* (Bankr. E.D. Mich. Dec. 15, 2014), the court declined to follow *Siegel*:

> Furthermore, to apply *Siegel* to this situation could arguably act as an open invitation for debtors to commit fraud in claiming exemptions, knowing that the Bankruptcy Court would be powerless to deny such. As a matter of policy, this is not only inappropriate, but for no apparent reason differentiates this particular situation from the other fraud inquiries under the Bankruptcy Code, which historically at least are unquestionably within the authority of the Bankruptcy Court to adjudicate. That, coupled with the very basic need for the Bankruptcy Court to maintain and enforce the integrity of the entire system, require that

4

> at the very least eliminating the authority of that Court to deal with fraud in this situation should either be as a result of (a) a clear statutory enactment or (b) specific binding decisional authority in a substantively analogous case, as opposed to the application of what needs to be seen as dictum and otherwise unwarranted.

*Id.* The court in *Woolner* chose not to apply *Siegel* because the policy considerations weighed towards continuing to deny bad faith amendments. While there may be the potential for an influx of bad faith exemption claimers, it is important to note there are other codified avenues to address this issue such as dismissal under 11 U.S.C. § 707(b)(3). Moreover, the analysis in *In re Gray*, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014) is persuasive in this instance. *Gray* recognizes the importance of following Supreme Court dicta.

> Supreme Court dicta is not to be taken lightly, and we must consider the rationale behind the holding, if sufficiently persuasive. *Cnty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter,* 492 U.S. 573, 668, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Kennedy, J., concurring in judgment in part and dissenting in part) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also their explications of the governing rules of law."). The Supreme Court's definitive position that the Bankruptcy Code does not grant bankruptcy courts "a general, equitable power ... to deny exemptions based on a debtor's bad-faith conduct" is clearly irreconcilable with the use of judicially created remedies either to bar amendments or to disallow amended exemptions. *Law,* 134 S.Ct. at 1196; *Miller v. Gammie,* 335 F.3d 889, 893 (9th Cir.2003) (holding prior circuit authority is effectively overruled where its reasoning or theory is clearly irreconcilable with the reasoning or theory of a higher authority).
>
> Thus, *Law v. Siegel* mandates the conclusion that the bankruptcy court is without federal authority to disallow the Amended Exemption or to deny leave to amend exemptions based on Debtors' bad faith.

*Id.* at 174-75. Essentially, dicta or not, the Supreme Court provides a clear directive concerning the limits of federal power. The principle of *stare decisis* compels adherence to the articulated standards of the Supreme Court. See *Carey v. Musladin,* 549 U.S. 70, 79 (2006)(Justice Stevens

5

dissenting to the majority's dismissal of dicta: "Virtually every one of the Court's opinions announcing a new application of a constitutional principle contains some explanatory language that is intended to provide guidance to lawyers and judges in future cases. It is quite wrong to invite state-court judges to discount the importance of such guidance on the ground that it may not have been strictly necessary as an explanation of the Court's specific holding in the case." (citations omitted)). It does not make sense for this court to make a determination it has sufficient reason to believe the Supreme Court would reverse.

Judicial estoppel does not require denial of the amended exemption to "prevent[s] the perversion of the judicial process." Trustee's Br. 5 (citing *Cannon-Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir. 2006)). Such a clear attempt to circumvent the effect of *Siegel* is not persuasive.

We may not reach the merits of the trustee's objection to Ms. Bogan's claim of exemptions on bad faith grounds. The bankruptcy code does not authorize such determinations. We must overrule the trustee's objection. It may be so ordered.

Dated: April 7, 2015

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

6